UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEENE SCHATTILLY,

                        Plaintiff,                            Case No. 14-cv-11905

v.                                             Honorable Thomas L. Ludington

THOMAS DAUGHARTY, et al.,

                        Defendants.

_____/

**ORDER OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S
OBJECTIONS, ADOPTING IN PART AND REJECTING IN PART AMENDED
REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTIONS TO
DISMISS, DISMISSING PLAINTIFF'S COMPLAINT AS TO THE MOVING
DEFENDANTS, AND DISMISSING COUNT FOUR AS TO ALL DEFENDANTS**

      Plaintiff Kathleene Schattilly[1] filed her complaint on May 12, 2014. ECF No. 1. On May

20, 2014, Schattilly filed a First Amended Complaint, ECF No. 6, alleging six separate counts of

relief against five different defendants. Schattilly styles Counts 1, 2, 3, and 5 of her First

Amended Complaint as claims for Interference with Familial Rights under the First and

Fourteenth Amendments. ECF No. 6. Count 4 of her complaint seeks a declaratory judgment that

MCL 722.628(8) violates the Fourth Amendment. Schattilly brings her claims against Thomas

Daugharty, a City of Frankenmuth police officer; Michelle Acevedo and Tamika Williams,

social workers with the Michigan Department of Human Services; and Stephanie Izzo and

Joanne Mahnke, counselors for Frankenmuth Schools.

      On July 17, 2014, Defendants Acevedo and Williams jointly moved to dismiss

Schattilly's complaint. ECF No. 11. On July 21, 2014, Defendants Izzo and Mahnke jointly

_____

[1] Schattilly is referred to in her First Amended Complaint as, alternatively, Kathleene (in the caption),
Kathleen (in paragraph 1), and Kathy (in paragraph 2). For purposes of consistency, the spelling of Schattilly's name
in the matter's caption will be adopted throughout, whether or not it is correct.

moved to dismiss Schattilly's complaint. ECF No. 12. Both sets of Defendants ("moving Defendants") make various claims as to why Schattilly's complaint should be dismissed but both argue primarily they are shielded by absolute or qualified immunity as to each of those counts that pertain to them. Furthermore, the moving Defendants argued that Schattilly lacks standing to press her declaratory judgment claim.

The motions to dismiss were referred to Magistrate Judge Morris for a recommended disposition. ECF No. 16. Judge Morris issued an Amended Report and Recommendation on November 24, 2014. ECF No. 33. On December 8, 2014, Schattilly filed objections to Judge Morris' Report. ECF No. 34. The moving Defendants then responded to those objections. ECF Nos. 35 & 36. It is those objections that are now under consideration.

## I.

Schattilly is a female resident of Saginaw County, Michigan who, at the time this action was commenced, had six children. Two of those children, AF[2] and Bailey, are the primary subjects of the current dispute. Schattilly claims that constitutional wrongs were committed by Defendants in their attempts to remove AF and Bailey from her custody.

Defendants Acevedo and Williams both "were child protective services workers at the time of the incidents [in question.]" ECF No. 11 at 2. Defendants Izzo and Mahnke are both counselors in the Frankenmuth School District. ECF No. 12 at 1.

## A.

"On May 10, 2011[,] Defendant Mahnke sent a report to [Child Protective Services] reporting neglect and abuse as to . . . AF and alleging that Plaintiff is responsible." ECF No. 6 at ¶ 11. Following the report, Defendant Williams was assigned to investigate. *Id*. at ¶ 12.

---

[2] AF is represented as still being a minor and so her identity is not disclosed.

The next day, May 11, 2011, Defendant Thomas Daugharty, a Frankenmuth Police Officer, put Defendant Izzo, another school counselor, in contact with Defendant Williams. *Id*. at ¶ 13. During this phone call "Defendant Izzo made additional allegations concerning Plaintiff." *Id*. at ¶ 14. On that same day, "Defendant Williams and another CPS worker (not a Defendant) went to Frankenmuth Schools at 2:56 p.m." to continue Defendant Williams' investigation, but AF had already been released from school for the day. *Id*. at ¶ 15. As a result, "Defendant Williams took no further action to determine the welfare of the minor at school on May 11, 2011." *Id*. at ¶ 16.

### B.

On May 12, 2011, Defendant Mahnke contacted CPS again and sent the agency medical documentation related to AF. *Id*. at ¶ 18.

Later on that day, "at 11:52 a.m. [AF] was interviewed at her school by Defendants Acevedo, Williams[,] and Daugharty with the consent of Defendant Mahnke but without the consent of Plaintiff." *Id*. at ¶ 20. That afternoon "at 12:32 p.m. another minor child of Plaintiff's, Bailey Faulkner (now age 20), was interviewed at his school by Defendants Acevedo, Williams, and Daugharty with the consent of Defendant Mahnke but without the consent of Plaintiff . . . ." *Id*. at ¶ 22.

Also that day, at a time unspecified by Schattilly, "Daugharty and Acevedo informed [Schattilly] that [her] children would be removed once [they] arrived home on the bus and that AF and Bailey Faulkner were already being held at school." *Id*. at ¶ 24. Also at this time Daugharty allegedly directed Schattilly "to pack bags for all of her children with their necessities." *Id*. at ¶ 25. Finally, at 7:00 p.m., Schattilly "signed all of [her] children into

Innerlink Runaway and Transitional Living Program on the direction of Defendants Daugharty and Acevedo." *Id.* at ¶ 26.

## C.

On May 13, 2011, Defendants Acevedo and Williams held a "Permanency Planning Conference . . . at [Department of Human Services]" which Schattilly attended. *Id.* at ¶ 27. During that meeting, Defendant Acevedo informed Schattilly that there was no child-removal petition pending before a court and that, at that time, there was no "court order authorizing removal of the minor children from Plaintiff." *Id.* at ¶ 28. According to Schattilly, "[t]he consensus at the Permanency Planning Conference was to provide services to Plaintiff and the children through Families First and Michigan Comprehensive Counseling and the children would return home that day after school." *Id.* at ¶ 29. Furthermore, "[w]hen AF was initially informed on May 13, 2011 that she would return home she was pleased and happy to go home." *Id.* at ¶ 30.

Schattilly claims, however, that following the conference, Defendants Daugharty, Mahnke, and Izzo influenced Bailey and AF into requesting that they not return home. *Id.* at ¶ 31. Thus, at 2:26 p.m. that day, "Defendant Daugharty informed Defendant Williams that he would be taking [Bailey and AF] back to Innerlink instead of [to Schattilly's home.]" *Id.* at ¶ 32. Schattilly alleges also that "Defendant Williams warned Defendants Daugharty and Izzo that the placement [in Innerlink] by [Daugharty] would be without the authorization of CPS." *Id.* at ¶ 33. Daugharty brought AF and Bailey to Innerlink after they were released from school that day. *Id.* at ¶ 34.

**D.**

"On May 20, 2011, Defendant Acevedo signed a petition and obtained a court order to seize the minor children." *Id*. at ¶ 35. On July 25, 2011, Schattilly pled guilty to lack of proper custody or guardianship in relation to her care of Bailey and AF. Def. Mot. Dismiss, ECF No. 11 at Ex. 4 (ECF No. 14-4). On December 12, 2012, Schattilly's parental rights over AF were terminated by the Family Division of the Saginaw County Circuit Court. *Id*. at Ex. 5 (ECF No. 14-5).

**II.**

**A.**

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**B.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record.

**III.**

Schattily objects to Judge Morris' Report and Recommendation on ten separate grounds. They can be summarized as follows: (1) Schattily objects to the conclusion that she voluntarily signed her children into Innerlink; (2) the Innerlink consent form Schattily signed is not properly considered on a motion to dismiss; (3) *Pittman v. Cuyahoga County Department of Children and Family Services*, 640 F.3d 716 (6th Cir. 2011) is wrongly decided and should be revisited; (4) Schattily brings claims only on behalf of herself; (5) Schattily (seemingly) objects to the determination that the moving Defendants qualifiedly immune from Counts 1, 2, 3, and 5; (6) Schattily again contests the conclusion that her consent to place her children in Innerlink was voluntary; (7) Schattily objects to the recommendation that, in the event Defendant Acevedo is

not shielded from Count 5 by absolute immunity, she is shielded by qualified immunity; (8) Schattilly disagrees with the assertion that state statutory immunity would shield Defendants Mahnke and Izzo should federal qualified immunity not apply; (9) Schattilly objects to the recommendation that she lacks standing to pursue her declaratory judgment claim; (10) Schattilly renews her claims from her supplemental brief that the *Heck v. Humphrey*, 512 U.S. 477 (1994), waiver analysis is inapplicable to her case. Even though Schattilly laces many of her objections together around a single legal claim, each objection will be addressed separately.

### A.

Schattilly's first objection is to Judge Morris' statement that "it is clear that the facts are largely undisputed." ECF No. 34 at 1. Schattilly claims that "[t]here is a significant factual dispute as to whether [she] voluntarily signed any of her children into Innerlink or whether she did so only because she was yielding to the authority of the social workings and the police officer Defendants." *Id*. at 1-2. Defendants respond that the consent form attached to Defendants Acevedo and Williams' Motion to Dismiss can be read but one way: that Schattilly consented to the removal of her children and their temporary placement in Innerlink. ECF Nos. 35 & 36.

The form Schattilly signed consenting to the placement of her children in Innerlink was attached as Exhibit 2 to Defendants Acevedo and Williams' Motion to Dismiss. ECF No. 14, Ex. 2. Schattilly does not contest the authenticity of the document or that she signed the authorization. ECF No. 34 at 2. Rather, she claims that her consent was not given freely and was coerced by the Defendants. *Id*. More importantly, in her First Amended Complaint, she alleges the following as it concerns her consent to her children's placement in Innerlink:

> 24. On May 12, 2011 Defendants Daugharty and Acevedo informed Plaintiff that the children would be removed once the children arrived home on the bus and that AF and Bailey Faulkner were already being held at school.

25. Defendant Daugharty ordered Plaintiff to pack bags for all of her children with their necessities.

26. On May 12, 2011 at 7:00 p.m., Plaintiff signed all of the children in to Innerlink Runaway and Transitional Living Program on the direction of Defendants Daugharty and Acevedo.

. . .

49. On May 12, 2011, Defendants Daugharty, Acevedo, and Williams ordered Plaintiff Kathleen Schattilly to also relinquish custody of her other children on May 12, 2011 and sign them all in to Innerlink.

. . .

53. Defendants Daugharty, Acevedo and Williams interfered with the intimate relationship between Plaintiff Kathleen Schattilly and the children in Paragraph 50 above by seizing them on May 12, 2011 and ordering Plaintiff Schattilly to sign them in to Innerlink without Plaintiff Kathleen Schattilly's consent while Plaintiff Schattilly had lawful custody of them.

ECF No. 6 at ¶¶ 24-26, 49, 53.

Taking all these allegations as true, Schattilly does not manage to state a valid claim for relief. Schattilly makes nothing more than conclusory allegations regarding the improper influence of Defendants Daugharty, Acevedo, and Williams. *Iqbal*, 556 U.S. at 663 (holding that conclusory statements are "not entitled to be assumed true"). In fact, in her First Amended Complaint Schattilly makes no allegations of improper influence. She states only that she was "ordered" to sign her children into Innerlink. Schattilly alleges no facts that would vitiate the validity of her consent agreement.[3]

Assuming, however, for the sake of completeness, that Schattilly validly alleges that Defendants Acevedo and Williams[4] exerted undue influence on her which led to her signing the

---

[3] Schattilly further alleges that the Court has improperly considered the consent form in deciding Defendants' motions to dismiss. This argument is addressed *infra* § III.B, but for now it is sufficient to note that it is meritless and that the consent form is properly considered.

[4] And Defendant Daugharty, but the allegations against him will be put aside for the purposes of this opinion since he did not join in the motions to dismiss against Schattilly.

consent agreement, she is still unable to state a claim. In *Smith v. Williams-Ash*, 520 F.3d 596, 600 (6th Cir. 2008), the Sixth Circuit adopted the Seventh Circuit's reasoning in *Dupuy v. Samuels*, 465 F.3d 757 (7th Cir. 2006), that "[i]t is not a forbidden means of 'coercing' a settlement . . . to threaten merely to enforce one's legal rights." *Williams-Ash*, 520 F.3d at 600 (internal quotation marks omitted). The "threat of formal removal proceedings" was not an impermissible tactic on the part of an agency attempting to secure a parent's consent to a safety plan. *Id*. Here Schattilly has not alleged that the moving Defendants threatened her with anything that went beyond what could be accomplished through formal proceedings. To the extent that she has not made such an allegation, her complaint does not overcome the moving Defendants' qualified immunity.

## B.

Schattilly's next objection is that Judge Morris improperly considered the Innerlink consent agreement Schattilly signed. Schattilly argues that the consent agreement is only properly considered if the Defendants' motions are converted to motions for summary judgment. ECF No. 34 at 2. Schattilly bases her argument on *Jones v. Cincinnati*, 521 F.3d 555 (6th Cir. 2008), from which she includes an extensive quotation.

While *Jones*, in some respects, is applicable to the consideration of Schattilly's consent agreement, it is not the most appropriate authority. *Jones*, in the particular section quoted by Schattilly, only addresses situations where extrinsic evidence "captures only part of the incident and would provide a distorted view of the events at issue[.]" *Jones*, 521 F.3d at 562 (internal quotation marks omitted). And rather than state categorically that this evidence must be disregarded, the Sixth Circuit held that a district court may set it aside and not consider it on review of the Rule 12(b)(6) motion before it. *Id*. This guidance from the Sixth Circuit only

delineates the scope of a district court's discretion when deciding whether to consider documents extraneous to the pleadings, it does not describe the rule governing the consideration of those documents.

That rule has been oft-repeated but bears reiteration here. Rule 12(b)(6) motions must typically be limited to consideration of the pleadings or converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). However, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). The rule is a simple one. If both requirements are met—that the document is referenced in the plaintiff's complaint and if the document is central to her claim—a district court acts within its discretion to consider the document.

Here, Schattilly both references the consent document in her complaint and relies upon it in constructing her constitutional claims against Defendants. *See* ECF No. 6 at ¶¶ 24-26, 49, 53. She argues, however, that the Court should not consider the document because it "does nothing to explain the circumstances surrounding its creation." ECF No. 34 at 3. But Schattilly does not explain how the consent form's silence regarding its creation "captures only part of the incident" it purports to represent. Indeed, the document speaks to the entirety of Schattilly's consent—something she admits she gave. ECF No. 33 at 3-4 (". . . at oral argument, Plaintiff clarified that she did not consent to her children being placed outside the home, but rather only consented to the only place available that had beds, i.e., Innerlink. In other words, Plaintiff argued that she consented to the place, but not the placement.") The question of whether that consent was given freely is an entirely separate matter. If Schattilly's consent was coerced in a manner that vitiates

the willfulness of that consent then the fact of her consent will be disregarded on that basis. *See* analysis *supra* § III.A. But the consent will not be disregarded simply because it was attached to Defendants Acevedo and Williams' motion to dismiss. In that form the document was properly considered and Schattilly's objection will be overruled.

## C.

Schattilly's third objection is made to preserve her right to challenge Sixth Circuit precedent on appeal. She believes that *Pittman v. Cuyahoga County Department of Children and Family Services*, 640 F.3d 716 (6th Cir. 2011) wrongly extended absolute immunity to social workers making false claims in state family court removal petitions. She admits, however, that the law of Pittman as it currently stands in the circuit was correctly applied by Judge Morris. ECF No. 34 at 4. Schattilly's disagreement with *Pittman*'s reasoning is noted, but her objection is overruled as this Court is bound by the law of *Pittman*.

## D.

Schattilly's fourth objection is less an objection than a clarification. She states: "On page 12 of the Report, [Judge Morris] says it is not clear whether Plaintiff complains on behalf of herself or her children. To the contrary, Plaintiff specifically disavowed bringing any claims on behalf of the children." ECF No. 34 at 4. The Report does recommend that Schattilly would lack standing to bring claims on behalf of her minor children "because she 'does not establish that [s]he has parental rights over them.'" ECF No. 33 at 12 (quoting Sefa v. Kentucky, 510 F. App'x 435, 438 (6th Cir. 2013)) (alteration in Report, ECF No. 33). But because Schattilly does not pursue claims on behalf of her children—as she makes clear in this "objection"—she does not seek any relief from Judge Morris' Recommendation. To the extent she objects to Judge Morris

even considering the possibility that she might press claims on her children's behalf, her objection is overruled.

**E.**

Schattily next objects to Judge Morris' determination that the moving Defendants are entitled to qualified immunity on Counts 1, 2, 3, and 5. ECF No. 34 at 4. The substance of this objection is not entirely clear, however. Schattily claims that Judge Morris "has fallen into step with the false claim of Defendants that Plaintiff is seeking liability because she was subjected to an investigation. This is simply incorrect and is nowhere to be found in the First Amended Complaint or Plaintiff's responses." *Id.* at 5. But Schattily does not go on to explain exactly what the basis of her claim for liability is. The four counts in question all seek damages for the conduct of the Defendants and if, as Schattily contends, that conduct is not the investigation that took place in May of 2011 it is not clear to what conduct she could be referring.

Assuming, nevertheless, in the alternative, that Schattily complains of some conduct by Defendants that violated her constitutional rights, she still fails to overcome, on the face of her complaint, the shield of immunity enjoyed by the moving Defendants. As explained in the Report, determining the applicability of qualified immunity involves a three-step inquiry:

> (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). "Qualified immunity must be granted if the plaintiff cannot establish each of these elements." *Radvansky*, 395 F.3d at 302. As the report also explained,

- 12 -

these inquiries need not be sequentially addressed. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Judge Morris' Report, in analyzing Schattilly's claims, found that, even assuming that the first qualified immunity prong was met, Schattilly cannot show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." Schattilly expended great effort in her early papers contesting this assertion. In her objections, however, she concedes that she "has acknowledged that lack of Sixth Circuit precedent creating clearly established law[.]" ECF No. 34 at 5.

But even going beyond the Sixth Circuit, the only authority that Schattilly presents in support of the proposition that conducting an interview with a child at school without the parent/guardian's consent is a Ninth Circuit decision that was vacated in relevant part by the Supreme Court. *See Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009) (*Greene I*) vacated in part, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) and vacated in part, 661 F.3d 1201 (9th Cir. 2011) (*Greene II*). Ignoring the fact that out-of-circuit opinions hold no precedential value to a district court located in the Sixth Circuit, the opinion in *Greene v. Camreta*, 588 F.3d 1011, was vacated and holds no precedential value at all. *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case.").

Furthermore, even if the Ninth Circuit's opinion in *Greene I* had persuasive value, it would be of no assistance to Schattilly. As she concedes when analyzing *Greene I* in her response to Defendants' motions: "The Ninth Circuit found that the seizure for purposes of the interview without consent and without a warrant violated the Fourth Amendment. The Ninth

- 13 -

Circuit, however, found that the conduct was not clearly established as a violation within a school setting and granted qualified immunity." ECF No. 21 at 10. It would be an uphill struggle to argue that a single decision from an out-of-circuit federal appellate court suffices to establish "a clearly established constitutional right of which a reasonable person would have known[.]"

But even if that proposition could be so established by a single case, *Greene I* would not be the case to accomplish that objective. The opinion in *Greene I* is inapposite to the claims being put forward by Schattilly. In *Greene I*, as Schattilly admits, the Ninth Circuit held that it was a violation of the Fourth Amendment rights of the child being interviewed where that child is interviewed without parental consent. That could hardly establish Schattilly's constitutional claim: that such an interview violates the parent's Fourteenth Amendment rights of familial association.

This analysis, however, does not touch on Schattilly's claim that the qualified immunity analysis as it applies to Count 5 is incorrect. Schattilly, in her fifth objection, does not address this analysis so it will not be entertained here. She does address the application of qualified immunity to Count 5 in her seventh objection. That issue will be addressed when that objection is considered.

Regardless of how Schattilly's objection is structured, the objection to Judge Morris' recommendation that qualified immunity forestalls her pursuit of Counts 1, 2, and 3 against the moving Defendants is without merit and Judge Morris' analysis will be adopted.

**F.**

Schattilly next appears to object, once again, to Judge Morris' construction of the consent agreement. Schattilly includes a long quote from the Report where Judge Morris' explains why Schattilly's explanation of her consent—that it was valid as to the place, but not the removal—

- 14 -

could not be credited. Schattilly seems to take issue with Judge Morris' determination that, on the basis of *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008), she does not state a valid claim.

Schattilly states that "[i]n the instant case, a factual dispute as to the consent to utilize Innerlink could not be starker but the Magistrate has resolved that dispute without any authority to do so." ECF No. 34 at 7. There is not, however, any factual dispute in this case. All facts alleged by Schattilly, at this stage, are taken as true. But even taking the facts in the complaint as true, as discussed above, Schattilly's complaint does not succeed. This issue has already been analyzed, *supra* § III.A, it will not be entertained again here. The objection is overruled.

**G.**

Schattilly's next objection is to the Report's recommendation that Defendant Acevedo, if not granted absolute immunity with respect to Count 5, should be granted qualified immunity. ECF No. 34 at 7-8. As noted above, supra § III.C, Schattilly does not object to Judge Morris' absolute immunity analysis and that analysis will be adopted. As a result, Judge Morris' analysis of Defendant Acevedo's qualified immunity to Count 5, while very helpful, is not necessary to disposing of the case and does not affect Schattilly's outcome. Since Schattilly's objection to Judge Morris' analysis of Defendant Acevedo's absolute immunity to Count 5 is without merit, the qualified immunity analysis is unnecessary. Schattilly's objection will be sustained and that portion of the Report will not be adopted.

**H.**

Schattilly's eighth objection is to Judge Morris' suggestion that Defendants Izzo and Mahnke would enjoy state statutory immunity if they are not shielded by qualified immunity. ECF No. 34 at 8-9. Just as with the prior objection, Schattilly objects to an alternative analysis of Judge Morris that is not necessary to the ultimate disposition of her claim, particularly since

Defendants Izzo and Mahnke are, in fact, shielded by qualified immunity. As a result, Schattilly's objection will be sustained and the corresponding section of the Report will not be adopted.

## I.

Schattilly, in her ninth objection, contests Judge Morris' recommendation that she lacks standing to pursue her declaratory judgment action. ECF No. 34 at 9. Schattilly seeks a declaratory judgment that MCL 722.628(8)[5] violates the Fourth Amendment. ECF No. 6 at 10-12. In support of her objection she directs the Court to the analysis of standing she provided in her Response to Defendants' Motions to Dismiss:

> The injury that must be alleged may be either a past or a future injury. *Pestrak v. Ohio Elections Commission*, 926 F.2d 573, 576 (6th Cir.), cert. dismissed, 502 U.S. 1022, 112 S.Ct. 672, 673, 116 L.Ed.2d 763 (1991). Especially when First Amendment rights and freedoms are involved, courts do not require that a litigant actually suffer the impact of an allegedly unconstitutional enactment. Id. Nevertheless, a threat of injury alleged by a plaintiff must be " 'real and immediate,' not 'conjectural' or 'hypothetical.' " *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).
>
> To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, ___ U.S. ___, 134 S.Ct. 2334, ___ L.Ed.2d ___ (2014) [quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)]).

*See* ECF No. 34 at 10 (quoting Pl. Resp. Br., ECF No. 21 at 17-19).

---

[5] MCL 722.628(8) reads:

A school or other institution shall cooperate with the department during an investigation of a report of child abuse or neglect. Cooperation includes allowing access to the child without parental consent if access is determined by the department to be necessary to complete the investigation or to prevent abuse or neglect of the child. The department shall notify the person responsible for the child's health or welfare about the department's contact with the child at the time or as soon afterward as the person can be reached. The department may delay the notice if the notice would compromise the safety of the child or child's siblings or the integrity of the investigation, but only for the time 1 of those conditions exists.

- 16 -

Simply restating the arguments she previously presented does not make Schattilly's claim for standing any more meritorious. While she correctly recites in her Response Brief that the possibility of future injury may furnish standing, the future injury she posits is far too speculative to be credited and so is nothing more than a "generalized grievance." *Ratte v. Corrigan*, 989 F. Supp. 2d 565, 568-69 (E.D. Mich. 2013) (holding that a claim based on possible future harm that does not have a significant possibility of materializing amounts to no more than a generalized grievance that does not meet prudential standing requirements). Judge Morris recommended that this count be dismissed because Schattilly lacks prudential standing. That is: irrespective of whether Schattilly has actual standing to pursue this claim, she would be asserting a generalized grievance and prudence counsels not hearing her cause of action.

Schattilly has not addressed this analysis by Judge Morris. Rather, she has focused her energy on reiterating her point, first made in her Response Brief, ECF No. 21, that she has constitutional standing. But Schattilly advances nothing to justify disturbing Judge Morris' recommendation that Schattilly lacks prudential standing to pursue her declaratory judgment action and that the count alleging this action should be dismissed. Schattilly's objection will be overruled.

In the alternative, however, it should be noted that Schattilly also lacks constitutional standing, despite her claims to the contrary. Schattilly correctly recites the requirements of constitutional standing in her Response Brief, ECF No. 21. What she lacks, however, is a showing that she suffers an "injury in fact" by the operation of the statute. Yes, such an injury may lie in the future. But as the Supreme Court held in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), "Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official

conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 101-02. The claim by Schattilly that she may adopt children in the future which then may be subject to the interview-absent-parental-consent procedure authorized by MCL 722.628(8) could not better exemplify a hypothetical future harm. There is nothing imminent about Schattilly's fear of injury under the statute.

Schattilly attempts to sidestep this infirmity by claiming that "[e]specially when First Amendment rights and freedoms are involved, courts do not require that a litigant actually suffer the impact of an allegedly unconstitutional enactment." ECF No. 21 at 18. That may be. But Schattilly's claim does not sound in the First Amendment. She does, it is true, state in her First Amended Complaint that she suffered a loss of familial association in violation of the First and Fourteenth Amendments. *See, e.g.*, ECF No. 6 at 5. But mere recitation of the First Amendment does not mean she benefits from its potentially more generous standing requirements. Schattilly seeks damages for loss of familial association. The right to family integrity rests not within the First Amendment but within the Fourteenth Amendment's Substantive Due Process guarantees. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment . . ."); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment."); *see also Hooks v. Hooks*, 771 F.2d 935, 941 (6th Cir. 1985) (holding that parents have a liberty interest in the custody of their children that sounds in due process). Thus, Schattilly cannot avail herself from any perceived laxity in the standing requirements for First Amendment claims.

Schattilly, being unable to establish either constitutional or prudential standing to press her declaratory judgment claim, will have that claim dismissed as to all Defendants for want of jurisdiction.

## J.

Schattilly's final objection, like her seventh and eighth objections, takes issue with an alternative ground of disposition found by Judge Morris. ECF No. 34 at 10. Schattilly urges this Court to adopt the reasoning of her supplemental brief on the issue of *Heck* waiver, *see Heck v. Humphrey*, 512 U.S. 477 (1994), and decline to adopt the Report's recommendation that Heck waiver applies to bar her claims. *Id*. Since the issue of *Heck* waiver was presented in the third alternative and does not bear on the resolution of Schattilly's case, that portion of the Report will not be adopted and Schattilly's objection seeking such relief will be granted.

## IV.

Accordingly, it is **ORDERED** that the Report and Recommendation, ECF No. 32, is **REJECTED as moot**.

It is further **ORDERED** that the Amended Report and Recommendation, ECF No. 33, is **ADOPTED in part** and **REJECTED in part**.

It is further **ORDERED** that Plaintiff Schattilly's objections, ECF No. 34, are **OVERRULED in part** and **SUSTAINED in part**.

It is further **ORDERED** that Defendants Acevedo and Williams' Motion to Dismiss, ECF No. 11, is **GRANTED**.

It is further **ORDERED** that Defendants Izzo and Mahnke's Motion to Dismiss, ECF No. 12, is **GRANTED**.

It is further **ORDERED** that Counts 1, 2, 3, and 5 of Plaintiff Schattilly's First Amended Complaint, ECF No. 6, are **DISMISSED with prejudice** as to Defendants Acevedo, Williams, Izzo, and Mahnke.

It is further **ORDERED** that Count 4 of Plaintiff Schattilly's First Amended Complaint, ECF No. 6 at 10, is **DISMISSED without prejudice** as to all Defendants.

Dated: March 20, 2015                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 20, 2015.

s/Suzanne M. Gammon
SUZANNE M. GAMMON

---