UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEENE SCHATTILLY,  CASE NO. 14-cv-11905
*Parent and Next Friend of AF,*
*a minor,*

    *Plaintiff,*  DISTRICT JUDGE THOMAS L. LUDINGTON
  MAGISTRATE JUDGE PATRICIA T. MORRIS
*v.*

THOMAS DAUGHARTY,

    *Defendant.*[1]
_____/

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO DISMISS**[2]
(Doc. 37)

## I. RECOMMENDATION

For the reason set forth below, **IT IS RECOMMENDED** that Defendant's Motion (Doc. 37) be **GRANTED**.

## II. REPORT

### A. Background

By order of U.S. District Judge Thomas L. Ludington, the above motion to dismiss was referred to the undersigned Magistrate Judge on March 2, 2015. (Doc. 38.) A previous Report and Recommendation ("R&R") was adopted in part, leaving the following Counts alleged in the amended complaint viable against Defendant Daugharty under 42 U.S.C. § 1983: (1) that Defendant interfered with Plaintiff's familial rights in violation of the First and Fourteenth

---

[1] All other Defendants were terminated from the case on March 30, 2015.

[2] I note that the motion was docketed as a motion for summary judgment but the motion itself is referred to as a motion to dismiss and it cites Federal Rule of Civil Procedure 12, not Rule 56. (Doc. 37.)

Amendment rights of freedom of association and substantive due process when they seized A.F. and Bailey ("Plaintiff's children" or "the children") on May 12, 2011 for an interview at school; (2) that Defendant interfered with Plaintiff's familial rights in violation of the First and Fourteenth Amendment rights of freedom of association and substantive due process when they forced all Plaintiff's children into a runaway program, Innerlink, on May 12, 2011; and (3) that Defendant interfered with Plaintiff's familial rights in violation of the First and Fourteenth Amendment rights of freedom of association and substantive due process when they seized AF and Bailey on May 13, 2011. (Doc. 6; Doc. 41.) Plaintiff indicates that she never consented to her children being interviewed at school, as averred in Counts 1 and 3. (Doc. 11, Ex. 2; Doc. 40 at 2-3.)

Plaintiff also argues that "[w]hile Plaintiff does rely on *Kovacic v. Cuyahoga County Department of Children and Family Services*, 724 F.3d 687 (6th Cir. 2013) (finding that Fourth Amendment to social workers [was] clearly established in 2002) and *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009) (Fourth Amendment violated by warrantless interview of minor child at school without parental consent) this is to show that the reliance by Defendants on the state statute is not a defense to the seizure of the child. The issue in this lawsuit is whether this conduct violated Plaintiff's First and Fourteenth Amendment rights, not the Fourth Amendment rights of the children." (Doc. 40 at v.)

On February 23, 2015, Defendant Daugharty filed the instant motion to dismiss. (Doc. 37), Plaintiff responded (Doc. 40), and Defendant Daugharty replied. (Doc. 42.) Therefore, the motion is ready for Report and Recommendation.

As indicated in the previous R&R, the facts are largely undisputed. Defendant Daugharty is a police officer who was contacted by a Frankenmuth school counselor reporting possible child

abuse of Plaintiff's children. One of Plaintiff's children, Bailey, is now an adult but the other child, A.F., is still a minor.

### B. Motion to Dismiss Standards

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. " *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious

discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

"'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)). This Circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

I therefore suggest that consideration of Plaintiff's consent to actions taken in the state probate court case does not convert the instant motion to one for summary judgment. *Bruker v. City of New York*, No. 93Civ3848(MGC)(HBP), 2003 WL 256801, at *5 (S.D. N.Y. Feb. 4, 2003) (holding that reference to consent documents did not convert motion to dismiss to one for summary judgment).

### C. Analysis and Conclusions

#### 1. Qualified Immunity

Defendant contends that he is entitled to qualified immunity. (Doc. 37 at ID 488-97.) The qualified immunity analysis involves three inquiries.

> (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred"; (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v City of Olmsted*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Courts are no longer required to address these inquiries sequentially; instead a court may use its sound discretion to determine which of the prongs of the qualified immunity analysis should be considered first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although qualified immunity is often raised in a motion for summary judgment rather than a motion to dismiss, it may be considered via a motion to dismiss. *See, e.g.*, *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994); *see also Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011) (reversing lower court's denial of a motion to dismiss because no clearly established constitutional right had been violated). Using the motion to dismiss standards, the court must assume all

5

Plaintiff's allegations are true and determine whether, as averred, any constitutional violation occurred. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 325 (6th Cir. 2013); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

The right to family integrity or familial association is included in the Fourteenth Amendment substantive due process right of freedom of intimate association. *J.B. v. Washington Cnty.*, 127 F.3d 919, 927 (10th Cir. 1997). Federal courts

> have recognized a protected right to familial association, and [have] allowed parents or their children to recover under § 1983 for alleged unconstitutional conduct primarily directed toward another family member[, but] have done so only where the plaintiffs have alleged a permanent, physical loss of association of an immediate family member as a result of unlawful state action.

*Pittsley v. Warish*, 927 F.3d 3, 8 (1st Cir. 1991) (quoted in *Bukowski v. City of Akron*, 326 F.3d 702, 712 n.2 (6th Cir. 2003)). "Moreover, the Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006).

On the other hand, courts have held that there is no constitutionally protected right to visitation while children are temporarily housed, such as when they are in foster care. *Scrivner v. Andrews*, 816 F.2d 261, 263-64 (6th Cir. 1987) (cited in *Toliver v. Lutheran Soc. Servs.*, No. 07-14179, 2009 WL 211034, at *1-2 (E.D. Mich. Jan. 27, 2009)). In addition, the "right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir. 1993); *accord Foy v. Holston*, 94 F.3d 1528, 1536 (11th Cir. 1996).

6

"[S]tate officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of 'clearly established law.'" *Foy*, 94 F.3d at 1537. Therefore, "it should come as no surprise that no controlling case law establishes that it is unreasonable for a [state] social worker to interrogate a minor at her school during the course of an investigation of allegations of child abuse." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012) (granting motion to dismiss based on qualified immunity because social worker did not violate clearly established law). The court went on to explain that a state social worker "'cannot be held to a standard of conduct which is unsettled by the Supreme Court . . . this circuit' or 'the highest state court.'" *Id.* at 1206 (citation omitted).

As to the claims that the children were interviewed without consent from a parent and that the children were improperly seized (Counts 1 and 3), the court is guided by *Brent v. Wenk*, 555 F. App'x 519, 529 (6th Cir. 2014). In that case, the Sixth Circuit held that social workers who interrogated the plaintiff's children without his consent and seized his child when they forced the child to show them around the home were entitled to qualified immunity because there was no case law clearly establishing that such conduct violated the constitution. The court in *Brent* expressly distinguished cases alleging a Fourth Amendment challenge brought by the child, from a claim, as in *Brent* and the instant case, brought by a parent under Fourteenth Amendment. *Brent* at 529 (citing *Myers v. Potter*, 422 F.3d 347 (6th Cir. 2005) (holding that police officers violated plaintiff's Fourth Amendment rights by interrogating him, while he was a minor, for three hours beyond the one hour to which his mother had consented)). Although the Fourth Amendment violation might have been clearly established, any Fourteenth Amendment violation to the parent was not clearly established.

7

The Court in *Brent* also noted that out-of-Circuit precedent "provides no authority to suggest that a father personally suffers a constitutional violation when social workers interrogate his children without his consent." *Id.* at 529-30 (distinguishing *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003), which held that the parent plaintiffs' rights were violated when defendants interviewed their child without consent and with no reasonable suspicion of abuse). Finally, the court in *Brent* distinguished *Kovacic v. Cuyahoga County Department of Children and Family Services*, 724 F.3d 687 (2013), because that case "did not address whether a temporary seizure within the home (i.e., to interrogate the children)" violated the Fourth Amendment, let alone whether such a seizure would have violated the parents' Fourteenth Amendment rights. *Id.*

I suggest that *Brent* is a sound decision and that the same analysis would apply to Defendant Daugharty, a police officer, as it would social workers. I therefore suggest that Defendant Daugharty is entitled to qualified immunity for interviewing Plaintiff's children at school without parental consent and for seizing the children. *See also Reguli v. Guffee*, 371 F. App'x 590, 599 (6th Cir. 2010) (holding that where mother brought § 1983 action, defendant social worker entitled to qualified immunity for child abuse investigative actions taken against the parent including appearing at home and interviewing parent and threatening removal of children); *Barnes v. Cnty. of Placer*, 386 F. App'x 633, 636 (9th Cir. 2010) (finding child protective worker entitled to qualified immunity where she interviewed child and took child into protective custody without parental permission or a warrant); *Van Buren v. Crawford Co.*, No. 13-14565, 2014 WL 2217016, at *8 (E.D. Mich. May 29, 2014) (finding defendant social worker entitled to qualified immunity for parent's claim that defendants violated his due process rights by interfering with the integrity of his family for investigating child abuse allegations); *K.D. ex rel. Duncan v. White Plains Sch.*

8

*Dist.*, 921 F. Supp. 2d 197, 213-16 (S.D. N.Y. 2013) (finding defendants who interviewed child at school regarding possible child abuse investigation without parental consent or a warrant were entitled to qualified immunity).[3]

As to Plaintiff's claim that her children were forced into the Innerlink runaway program (Count 2), Defendant contends that his role in transporting the minor children to Innerlink did not violate Plaintiff's constitutional rights and that he is also entitled to qualified immunity from this claim. (Doc. 37 at ID 496-97.) Defendant also argues that Plaintiff consented to the placement and thus, cannot now complain about it. (Doc. 37 at ID 496-97.) Plaintiff has clarified that although she consented to Innerlink (the particular placement), she did not consent to her children being placed outside the home in general. I suggest that this argument attempts to create distinctions that do not exist and is undermined by the fact that Plaintiff never sought to withdraw her consent to placement in general. I therefore suggest that Plaintiff cannot establish any constitutional violation. *Smith v. Williams-Ash*, 520 F.3d 596, 600 (6th Cir. 2008) (finding that failure to revoke consent to child safety plan, despite repeated inquiries about the investigation, required dismissal of First and Fourteenth Amendment claims because "mere displeasure and frustration fails to negate their consent"). Accordingly, I recommend that Defendant Daugharty's motion to dismiss be granted as to this ground as well.

**2.      Waiver/Estoppel/Bar**

---

[3] A Ninth Circuit decision previously held that interview of a minor child at school regarding child abuse allegations without a warrant, absent exigent circumstances or parental consent, violated the minor's Fourth Amendment rights; but the court granted qualified immunity because the right was not clearly established. *Greene v. Camreta*, 588 F.3d 1011, 1015 (9th Cir. 2009). However, the United States Supreme Court vacated that holding, finding that the minor's constitutional claim was moot; therefore, the Ninth Circuit opinion is of no precedential value. *Camreta v. Greene*, 131 S. Ct. 2020, 2033 (2011).

Defendant Daugharty argues that Plaintiff has waived her claims by reason of termination of her parental rights. (Doc. 37 at ID 498-99.) "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014) (citations omitted). While a failure to object to an error is not waiver, a failure to object "'forfeits all unpreserved claims and plain error review applies on appeal'"; however, "where the defendant has 'explicitly agreed' to a sentencing guideline calculation, any later challenge to the calculation "is waived." *Id.* (citations omitted).

Here, Plaintiff concedes that she knowingly and voluntarily consented to termination of her parental rights. *See* (Doc. 11, Exs. 4, 5) (filed under seal). Plaintiff alleges that Defendants engaged in misconduct along the path to her eventual, consensual termination of her parental rights. Plaintiff does not challenge the ultimate termination because she agreed to it. Therefore, the question becomes whether her ultimate consent to termination of her parental rights waives any arguments of impropriety leading up to termination. I suggest that it does. *See Bruker*, 2003 WL 256801, at *5 ("[P]laintiff's consent to removal precludes plaintiff from asserting a substantive due process challenge to defendants' removal."); *In the Matter of Long*, No. 286436, 2009 WL 350756, at *2 (Mich. Ct. App. Feb. 12, 2009) (rejecting argument that prior voluntary termination could not be used to support current termination, where it was argued that the prior voluntary termination was obtained under the wrong statutory provision, because that argument was waived by admissions in current termination proceedings and because she "voluntarily agreed to the termination of her parental rights to her eldest child"); *Family Independence Agency v. Ollie*, Nos. 254909, 255181, 257565, 2005 WL 1399323, at *4 (Mich. Ct. App. June 14, 2005) (finding "no

10

merit" to father's argument that termination order improperly included youngest son born while three older children were within the probate court's jurisdiction because "father waived a best interests hearing" and that "waiver extinguishes any error.") In addition, at least one court has applied the *Heck v. Humphrey*[4] bar or issue preclusion or estoppel in a like situation. In *Alberici v. County of Los Angeles*, No. 12-10511, 2013 WL 5573045, at *13 (C.D. Cal. Oct. 9, 2013), the court held that where the plaintiffs did not move to set aside the orders of the juvenile court placing the children in the care of their grandparents, the § 1983 action for violation of the rights to familial association were barred.

I therefore suggest that Defendant's motion to dismiss be granted on this ground of waiver/estoppel/bar as well.

### 3. Conclusion

For the reasons stated above, I recommend that Defendant's motion to dismiss be granted and that the case be dismissed in its entirety.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The

---

[4] 512 U.S. 477 (1994).

parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 15, 2015              S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 15, 2015              By s/Kristen Krawczyk
                                          Case Manager to Magistrate Judge Morris