UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEENE SCHATTILLY,

                Plaintiff,                Case No. 14-cv-11905

v.                                          Honorable Thomas L. Ludington

THOMAS DAUGHARTY, et al.,

                Defendants.

_____/

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION TO DISMISS, AND DISMISSING PLAINTIFF'S COMPLAINT**

Plaintiff Kathleene Schattilly[1] filed her complaint on May 12, 2014. ECF No. 1. On May 20, 2014, Schattilly filed a First Amended Complaint, ECF No. 6, alleging six separate counts of relief against five different defendants. Schattilly styles Counts 1, 2, 3, and 5 of her complaint as claims for Interference with Familial Rights under the First and Fourteenth Amendments. ECF No. 6. Count 4 of her complaint seeks a declaratory judgment that MCL 722.628(8) violates the Fourth Amendment. Schattilly brings her claims against Thomas Daugharty, a City of Frankenmuth police officer; Michelle Acevedo and Tamika Williams, social workers with the Michigan Department of Human Services; and Stephanie Izzo and Joanne Mahnke, counselors for Frankenmuth Schools.

On July 17, 2014, Defendants Acevedo and Williams jointly moved to dismiss Schattilly's complaint. ECF No. 11. On July 21, 2014, Defendants Izzo and Mahnke jointly moved to dismiss Schattilly's complaint. ECF No. 12. Both sets of Defendants ("moving Defendants") made various arguments as to why Schattilly's complaint should be dismissed but

---

[1] Schattilly is referred to in her First Amended Complaint as, alternatively, Kathleene (in the caption), Kathleen (in paragraph 1), and Kathy (in paragraph 2). For purposes of consistency, the spelling of Schattilly's name in the matter's caption will be adopted throughout, whether or not it is correct.

both argued primarily they are shielded by absolute or qualified immunity as to each of the counts that pertain to them. Furthermore, those Defendants argued that Schattilly lacked standing to press her declaratory judgment claim.

The motions to dismiss were referred to Magistrate Judge Morris for a recommended disposition. ECF No. 16. Judge Morris issued an Amended Report and Recommendation on November 24, 2014. ECF No. 33. On December 8, 2014, Schattilly filed objections to Judge Morris' Report. ECF No. 34. On March 20, 2015, Schattilly's objections were overruled in part and Judge Morris' Report and Recommendation was adopted in part and rejected in part. See March 20, 2015 Order, ECF No. 41. Judge Morris' recommended disposition was adopted and Defenants Acevedo, Williams, Izzo, and Mahnke's motions to dismiss were granted. Counts 1, 2, 3, and 5 of Schattilly's complaint were dismissed as to those four defendants. Lastly, Count 4 of Schattilly's complaint was dismissed as to all defendants because Schattilly lacked standing to seek a declaratory judgment.

Before the Court issued its March 20, 2015 Opinion and Order, the only defendant that did not file a motion to dismiss, Defendant Thomas Daugharty, filed a motion to dismiss. See Def.'s Mot. Summ. J., ECF No. 37.[2] That motion was referred to Judge Morris for consideration. ECF No. 38. On April 15, 2015, Judge Morris issued a report recommending that Daugharty's motion be granted and the final three claims of Schattilly's complaint be dismissed. See Rep. &

---

[2] The present motion for dismissal under Rule 12(b)(6) but was docketed by Daugharty as a motion for summary judgment. Why this is so was not explained by Daugharty. Furthermore, why Daugharty moves for relief under Rule 12(b)(6) despite having filed an answer eight months earlier, thus precluding Rule 12(b)(6) relief, also goes unexplained. Daugharty's motion need not be converted to a Rule 56 motion, however. It will be treated as a motion under Rule 12(c), which utilizes the same standard of review as Rule 12(b)(6). There is some evidence that Daugharty intended to move for dismissal under Rule 12(c). In Daugharty's initial request for relief, he writes: "Defendant Thomas Daugharty, by and through his attorneys, PLUNKETT COONEY, moves this court for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows for his Motion to Dismiss Pursuant to FRCP 12(b)(c) [sic]." Def.'s Mot. to Dismiss 1, ECF No. 37. While far from clear, it does suggest that Daugharty may have contemplated Rule 12(c) as the desired avenue for dismissal.

Rec., ECF No. 43. Schattilly timely objected to that report on April 26, 2015. *See* Pl.'s Objs., ECF No. 44. Those objections are now under consideration.

## I.

Schattilly is a female resident of Saginaw County, Michigan who, at the time this action was commenced, had six children. Two of those children, AF[3] and Bailey, are the primary subjects of the current dispute. Schattilly claims that Defendants unconstitutionally attempted to remove AF and Bailey from her custody. Defendant Thomas Daugharty is a police officer for the City of Frankenmuth. Pl.'s Am. Compl. ¶ 3, ECF No. 6.

### A.

"On May 10, 2011[,] Defendant Mahnke sent a report to [Child Protective Services] reporting neglect and abuse as to . . . AF and alleging that Plaintiff is responsible." ECF No. 6 at ¶ 11. Following the report, Defendant Williams was assigned to investigate. *Id.* at ¶ 12.

The next day, May 11, 2011, Daugharty put Defendant Izzo, another school counselor, in contact with Defendant Williams. *Id.* at ¶ 13. During this phone call "Defendant Izzo made additional allegations concerning Plaintiff." *Id.* at ¶ 14. On that same day, "Defendant Williams and another CPS worker (not a Defendant) went to Frankenmuth Schools at 2:56 p.m." to continue Defendant Williams' investigation, but AF had already been released from school for the day. *Id.* at ¶ 15. As a result, "Defendant Williams took no further action to determine the welfare of the minor at school on May 11, 2011." *Id.* at ¶ 16.

### B.

On May 12, 2011, Defendant Mahnke contacted CPS again and sent the agency medical documentation related to AF. *Id.* at ¶ 18.

---

[3] AF is represented as still being a minor and so her identity is not disclosed.

- 3 -

Later on that day, "at 11:52 a.m. [AF] was interviewed at her school by Defendants Acevedo, Williams[,] and Daugharty with the consent of Defendant Mahnke but without the consent of Plaintiff." *Id.* at ¶ 20. That afternoon "at 12:32 p.m. another minor child of Plaintiff's, Bailey Faulkner (now age 20), was interviewed at his school by Defendants Acevedo, Williams, and Daugharty with the consent of Defendant Mahnke but without the consent of Plaintiff . . . ." *Id.* at ¶ 22.

Also that day, at a time unspecified by Schattilly, "Daugharty and Acevedo informed [Schattilly] that [her] children would be removed once [they] arrived home on the bus and that AF and Bailey Faulkner were already being held at school." *Id.* at ¶ 24. Also at this time Daugharty allegedly directed Schattilly "to pack bags for all of her children with their necessities." *Id.* at ¶ 25. Finally, at 7:00 p.m., Schattilly "signed all of [her] children into Innerlink Runaway and Transitional Living Program on the direction of Defendants Daugharty and Acevedo." *Id.* at ¶ 26.

## C.

On May 13, 2011, Defendants Acevedo and Williams held a "Permanency Planning Conference . . . at [Department of Human Services]" which Schattilly attended. *Id.* at ¶ 27. During that meeting, Defendant Acevedo informed Schattilly that there was no child-removal petition pending before a court and that, at that time, there was no "court order authorizing removal of the minor children from Plaintiff." *Id.* at ¶ 28. According to Schattilly, "[t]he consensus at the Permanency Planning Conference was to provide services to Plaintiff and the children through Families First and Michigan Comprehensive Counseling and the children would return home that day after school." *Id.* at ¶ 29. Furthermore, "[w]hen AF was initially informed on May 13, 2011 that she would return home she was pleased and happy to go home." *Id.* at ¶ 30.

Schattilly claims, however, that following the conference, Defendants Daugharty, Mahnke, and Izzo influenced Bailey and AF into requesting that they not return home. *Id*. at ¶ 31. Thus, at 2:26 p.m. that day, "Defendant Daugharty informed Defendant Williams that he would be taking [Bailey and AF] back to Innerlink instead of [to Schattilly's home.]" *Id*. at ¶ 32. Schattilly alleges also that "Defendant Williams warned Defendants Daugharty and Izzo that the placement [in Innerlink] by [Daugharty] would be without the authorization of CPS." *Id*. at ¶ 33. Daugharty brought AF and Bailey to Innerlink after they were released from school that day. *Id*. at ¶ 34.

### D.

"On May 20, 2011, Defendant Acevedo signed a petition and obtained a court order to seize the minor children." *Id*. at ¶ 35. On July 25, 2011, Schattilly pled guilty to lack of proper custody or guardianship in relation to her care of Bailey and AF. Def. Mot. Dismiss, ECF No. 11 at Ex. 4 (ECF No. 14-4). On December 12, 2012, Schattilly's parental rights over AF were terminated by the Family Division of the Saginaw County Circuit Court. *Id*. at Ex. 5 (ECF No. 14-5).

### II.

### A.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**B.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record.

**III.**

Plaintiff registers eight separate objections to Judge Morris' Report & Recommendation. See Pl.'s Objs., ECF No. 44. The objections can be summarized as follows: (1) Schattilly objects to the conclusion that she voluntarily signed her children into Innerlink; (2) Judge Morris considered subsequent state court proceedings when analyzing Schattilly's Fourth Amendment claims but those proceedings are irrelevant to the claim; (3) the Innerlink consent form Schattilly

signed is not properly considered on a motion to dismiss; (4) Judge Morris improperly decided an issue of qualified immunity at the motion to dismiss stage; (5) the Report & Recommendation contains an "irrelevant" paragraph regarding visitation rights; (6) Schattilly (seemingly) objects to the determination that Daugharty is qualifiedly immune from Counts 1, 2, & 3; (7) Schattilly again contests the conclusion that her consent to place her children in Innerlink was voluntary; (8) Schattilly renews her claims from a supplemental brief that the *Heck v. Humphrey*, 512 U.S. 477 (1994), waiver analysis is inapplicable to her case.

Five of these objections (numbers 1, 3, 6, 7, & 8) are identical to objections Schattilly made to Judge Morris' prior Report & Recommendation, ECF No. 33. Four of those objections were overruled and one was adopted solely because it objected to an alternative analysis proposed by Judge Morris that was unnecessary to sustaining her ultimate disposition of the case. Schattilly does not explain or argue how the analysis of these objections should change when applied to Defendant Daugharty. For that reason, the objections will all be overruled, *see* March 20, 2015 Order, ECF No. 41, and the analysis will be repeated for completeness.[4] Schattilly's new objections will be reviewed in turn.

**A.**

Schattilly's first objection is to Judge Morris' statement that "it is clear that the facts are largely undisputed." ECF No. 44 at 1. Schattilly claims that "[t]here is a significant factual dispute as to whether [she] voluntarily signed any of her children into Innerlink or whether she did so only because she was yielding to the authority of Defendant Daugharty." *Id.* at 1-2. Daugharty argues that "[t]he fact is uncontested that Plaintiff signed a written consent to the placement at Inner Link [sic] and that consent was never withdrawn or revoked." Def.'s Resp.

---

[4] Schattilly's final objection, adopted in the March 20, 2015 Order, will not be adopted here. The difference in disposition is immaterial to the outcome of Schattilly's case since it turns on an alternative ground reached by Judge Morris which need not be reached in this order. Thus, there is no material difference between adopting or not adopting that portion of the Report.

Objs. 2, ECF No. 45. Surprisingly, Daugharty did not attach the form to his Motion to Dismiss. However, the Innerlink consent form can be considered because his co-defendants saw fit to attach it to their motions to dismiss which were filed prior to Daugharty's motion. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b) a court is generally permitted to consider documents attached to a motion to dismiss. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). But a court can consider documents beyond those attached to a motion to dismiss, "in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This includes documents that form part of the case's record. 5B Wright & Miller § 1357 (3d ed.). These documents may be considered without converting a motion to dismiss to a motion under Federal Rule of Civil Procedure 56.

The form Schattilly signed consenting to the placement of her children in Innerlink was attached as Exhibit 2 to Defendants Acevedo and Williams' Motion to Dismiss. ECF No. 14, Ex. 2. Schattilly does not contest the authenticity of the document or that she signed the authorization. ECF No. 44 at 2. Rather, she claims that her consent was not given freely and was coerced by Daugharty. *Id*. More importantly, in her complaint, she alleges the following as it concerns her consent to her children's placement in Innerlink:

> 24. On May 12, 2011 Defendants Daugharty and Acevedo informed Plaintiff that the children would be removed once the children arrived home on the bus and that AF and Bailey Faulkner were already being held at school.
>
> 25. Defendant Daugharty ordered Plaintiff to pack bags for all of her children with their necessities.
>
> 26. On May 12, 2011 at 7:00 p.m., Plaintiff signed all of the children in to Innerlink Runaway and Transitional Living Program on the direction of Defendants Daugharty and Acevedo.
>
> . . .

49. On May 12, 2011, Defendants Daugharty, Acevedo, and Williams ordered Plaintiff Kathleen Schattilly to also relinquish custody of her other children on May 12, 2011 and sign them all in to Innerlink.

. . .

53. Defendants Daugharty, Acevedo and Williams interfered with the intimate relationship between Plaintiff Kathleen Schattilly and the children in Paragraph 50 above by seizing them on May 12, 2011 and ordering Plaintiff Schattilly to sign them in to Innerlink without Plaintiff Kathleen Schattilly's consent while Plaintiff Schattilly had lawful custody of them.

ECF No. 6 at ¶¶ 24-26, 49, 53.

Taking all these allegations as true, Schattilly does not manage to state a valid claim for relief. Schattilly makes nothing more than conclusory allegations regarding the improper influence of Daugharty. *Iqbal*, 556 U.S. at 663 (holding that conclusory statements are "not entitled to be assumed true"). In fact, in her complaint Schattilly makes no allegations of improper influence. She states only that she was "ordered" to sign her children into Innerlink. Schattilly alleges no facts that would vitiate the validity of her consent agreement.[5]

**B.**

Schattilly, for her second objection, takes issue with Judge Morris' determination that subsequent state court proceedings are relevant to her claims. *See* Pl.'s Objs. 2, ECF No. 44. Schattilly quotes the portion of the Report where Judge Morris notes that considering her "consent to actions taken in the state probate case does not convert the instant motion to one for summary judgment." *Id*. (quoting Rep. & Rec. 5, ECF No. 43). According to Schattilly, "[s]ubsequent judicial action are not relevant to whether Plaintiff was coerced weeks or months earlier or whether the circumstances justified the warrantless actions of the government actors at the time they were taken." *Id*.

---

[5] Schattilly further alleges that the Court has improperly considered the consent form in deciding Defendants' motions to dismiss. This argument is addressed *infra* § III.C, but for now it is sufficient to note that it is meritless and that the consent form is properly considered.

First, to the extent Schattilly objects to the specific language of the Report quoted above, her objection is misplaced. Judge Morris was merely noting that Schattilly's consent to removal can be considered in the context of a motion to dismiss. Judge Morris was not stating that the claims against Daugharty arise out of that later proceeding. This point, if indeed Schattilly's objection is to the consideration of the document, is discussed further at *infra* § III.C which takes up Schattilly's more explicit objection to consideration of the document.

Second, to the extent Schattilly makes the more general claim that the consent is not relevant whatsoever to her claims, her objection is also in error. Schattilly cites to a number of cases that support the proposition that probable cause for a seizure must exist at the time of the seizure. This is not in dispute. She also cites to a case that supports the proposition that a subsequent indictment cannot retroactively validate a prior unlawful arrest. This is also not in dispute. None of these cases provide any guidance for Schattilly's circumstance because she consented to the placement which she contends was the illegal seizure. Schattilly attempts to re-characterize her consent but as Judge Morris has twice explained, and this Court agrees with her reasoning, Schattilly's attempt at parsing her consent creates distinctions that do not exist. Sixth Circuit precedent precludes Schattilly from bringing her unlawful seizure claim where she consents to the seizure but does not take any steps to challenge or revoke that consent. *See Smith v. Williams-Ash*, 520 F.3d 596, 600-01 (6th Cir. 2008) (applying consent rule to an interference with familial rights claim). The Report is adopted on this point and Schattilly's objection is overruled.

## C.

Schattilly's next objection is that Judge Morris improperly considered the Innerlink consent agreement Schattilly signed. Schattilly argues that the consent agreement is only properly considered if Daugharty's motion is converted to a motion for summary judgment. ECF

No. 44 at 3-5. Schattilly bases her argument on *Jones v. Cincinnati*, 521 F.3d 555 (6th Cir. 2008), from which she includes an extensive quotation.

While *Jones*, in some respects, is applicable to the consideration of Schattilly's consent agreement, it is not the most appropriate authority. *Jones*, in the particular section quoted by Schattilly, only addresses situations where extrinsic evidence "captures only part of the incident and would provide a distorted view of the events at issue[.]" *Jones*, 521 F.3d at 562 (internal quotation marks omitted). And rather than state categorically that this evidence must be disregarded, the Sixth Circuit held that a district court may set it aside and not consider it on review of the Rule 12(b)(6) motion before it. *Id.* This guidance from the Sixth Circuit only delineates the scope of a district court's discretion when deciding whether to consider documents extraneous to the pleadings. It does not describe the rule governing the consideration of those documents.

That rule has been oft-repeated but bears reiteration here. Rule 12(b)(6) motions must typically be limited to consideration of the pleadings or converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). However, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). The rule is a simple one. If both requirements are met—that the document is referenced in the plaintiff's complaint and if the document is central to her claim—a district court acts within its discretion to consider the document.

There is an added consideration here, because Daugharty, as explained above, did not attach the consent document to his motion to dismiss. This issue has been addressed above. *See supra* § III.A. While the preferred method of incorporating a document extrinsic to a Plaintiff's

complaint is by attaching it to a motion to dismiss, where that document already forms a part of the court's record, the document may be considered without converting a motion to dismiss for a motion to summary judgment. *See Tellabs, Inc.*, 551 U.S. at 322.

Here, Schattilly both references the consent document in her complaint and relies upon it in constructing her constitutional claims against Defendants. *See* ECF No. 6 at ¶¶ 24-26, 49, 53. She argues, however, that the Court should not consider the document because it "does nothing to explain the circumstances surrounding its creation." ECF No. 44 at 5. But Schattilly does not explain how the consent form's silence regarding its creation "captures only part of the incident" it purports to represent. Indeed, the document speaks to the entirety of Schattilly's consent—something that she has previously admitted to the Court that she gave. *See* ECF No. 33 at 3-4 (". . . at oral argument, Plaintiff clarified that she did not consent to her children being placed outside the home, but rather only consented to the only place available that had beds, i.e., Innerlink. In other words, Plaintiff argued that she consented to the place, but not the placement.") The question of whether that consent was given freely is an entirely separate matter. If Schattilly's consent was coerced in a manner that vitiates the willfulness of that consent then the fact of her consent will be disregarded on that basis. *See* analysis *supra* § III.A. But the consent will not be disregarded because it was attached to Defendants Acevedo and Williams' motion to dismiss and now forms part of the record of the case. It may be fairly considered in deciding Daugharty's motion. *Id*. In that form the document was properly considered and Schattilly's objection will be overruled.

### D.

Schattilly appears to make two points with her fourth objection. First, she claims that Judge Morris ignored a host of factual allegations in the complaint when deciding that Daugharty is entitled to qualified immunity. Second, Schattilly argues that it is inappropriate for Judge

Morris to make a determination on qualified immunity at the motion to dismiss stage. Neither argument has merit.

First, Schattilly presents no evidence that Judge Morris ignored the factual allegations from the complaint that she lists in her objection. Instead, she merely makes a conclusory statement that these allegations were ignored. Furthermore, Schattilly does not explain how these facts would change the qualified immunity analysis. Indeed, they would not. Even if those facts establish the equivalent of a constitutional violation, Schattilly's argument would still not succeed because she does not demonstrate that such a constitutional violation was firmly established in the law.

Second, Schattilly rightly states that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). But this does not mean it was inappropriate in this case. Indeed, Schattilly offers no evidence to show that it is inappropriate to decide the qualified immunity issue on Defendant's motion to dismiss. Rather, if a plaintiff cannot plead the violation of a clearly established constitutional right, dismissal on the basis of qualified immunity pursuant to a Rule 12 motion is appropriate. *See Roth v. Guzman*, 650 F.3d 603 (6th Cir. 2011) (reversing district court's denial of qualified immunity at motion to dismiss stage because there was no clearly established constitutional right violated).

**E.**

Schattilly's fifth objection is to a discrete paragraph in Judge Morris' Report. Schattilly objects to Judge Morris' inclusion of the following paragraph:

> On the other hand, courts have held that there is no constitutionally protected right to visitation while children are temporarily housed, such as when they are in foster care. *Scrivner v. Andrews*, 816 F.2d 261, 263-64 (6th Cir. 1987) (cited in *Toliver v. Lutheran Soc. Servs.*, No. 07-14179, 2009 WL 211034, at *1-2 (E.D. Mich. Jan. 27, 2009)). In addition, the "right to family integrity clearly does not include a constitutional right to be free from child abuse investigations."

> *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir. 1993); accord *Foy v. Holston*, 94 F.3d 1528, 1536 (11th Cir. 1996).

Rep. & Rec. 6, ECF No. 43. According to Schattilly, this paragraph is irrelevant because she "never sought 'visitation' while the children were temporarily housed and has not made any claims that she has a right to be free from investigations." Pl.'s Objs. 7, ECF No. 44.

An objection regarding the irrelevance of a paragraph is surely a curious one. The paragraph appears to have no bearing on Judge Morris' ultimate conclusions concerning Schattilly's case, as Schattilly appears to recognize. Rather, the paragraph serves to outline the contours of parental rights under the constitution, an important discussion in light of the constitutional violations Schattilly claims. Schattilly alleges that her constitutional rights as a parent were violated when her children were seized. Understanding the extent of parental rights guaranteed by the Constitution is integral to analyzing these claims. Schattilly's objection is overruled.

**F.**

Schattilly next objects to Judge Morris' determination that Daugharty is entitled to qualified immunity on Counts 1, 2, & 3. ECF No. 44 at 7. The substance of this objection is not entirely clear, however. Schattilly claims that Judge Morris "has fallen into step with the false claim of Defendants that Plaintiff is seeking liability because she was subjected to an investigation. This is simply incorrect and is nowhere to be found in the First Amended Complaint or Plaintiff's responses." *Id*. at 7. But Schattilly does not go on to explain exactly what the basis of her claim for liability is. The counts in question all seek damages for the conduct of Defendant and if, as Schattilly contends, that conduct is not the investigation that took place in May of 2011 it is not clear to what conduct she could be referring.

Assuming, nevertheless, in the alternative, that Schattilly complains of some conduct by Defendants that violated her constitutional rights, she still fails to overcome, on the face of her

complaint, the shield of immunity enjoyed by Daugharty. As explained in the Report, determining the applicability of qualified immunity involves a three-step inquiry:

> (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). "Qualified immunity must be granted if the plaintiff cannot establish each of these elements." *Radvansky*, 395 F.3d at 302. As the report also explained, these inquiries need not be sequentially addressed. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Judge Morris' Report, in analyzing Schattilly's claims, found that, even assuming that the first qualified immunity prong was met, Schattilly cannot show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." Schattilly expended great effort in her early papers contesting this assertion. In her objections, however, she concedes that she "has acknowledged that lack of Sixth Circuit precedent creating clearly established law[.]" ECF No. 44 at 7.

But even going beyond the Sixth Circuit, the only authority that Schattilly presents in support of the proposition that conducting an interview with a child at school without the parent/guardian's consent is a Ninth Circuit decision that was vacated in relevant part by the Supreme Court. *See Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009) (*Greene I*) vacated in part, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) and vacated in part, 661 F.3d 1201 (9th Cir. 2011) (*Greene II*). Ignoring the fact that out-of-circuit opinions hold no precedential value to a district court located in the Sixth Circuit, the opinion in *Greene v. Camreta*, 588 F.3d 1011, was vacated and holds no precedential value at all. *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12

(1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case.").

Schattilly attempts to bolster her analysis of *Greene* by also citing *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003). But Schattilly does not explain how *Doe v. Heck* assists her argument. *Doe v. Heck* concerned the right to be free from unreasonable seizures at a private school and the Seventh Circuit limited its discussion of Fourth Amendment protections to seizures in *private* schools. 327 F.3d at 509-15. Second, *Doe v. Heck* deals specifically with caseworker seizures. While the law applicable to caseworkers is helpful because Daugharty was acting with caseworkers, it is not necessarily determinative. Even if it were determinative, Schattilly concedes that caselaw from the Sixth Circuit, specifically *Brent v. Wenk*, 555 F. App'x 519, 529 (6th Cir. 2014), is more directly applicable to her case and would lead to the conclusion that Daugharty is entitled to qualified immunity.

Despite the Report's focus on cases concerning seizures by caseworkers, the burden is on Schattilly to "show that the . . . procedure [employed by Daugharty] contravenes clearly established federal law." *Brent v. Wenk*, 555 F. App'x at 528. Schattilly does not provide any authority other than *Greene* and *Doe v. Heck*, both cases concerning caseworkers, to support her position that Daugharty violated clearly established law. Thus, regardless of how Schattilly's argument is structured, the objection to Judge Morris' recommendation that qualified immunity forestalls her pursuit of Counts 1, 2, & 3 against Daugharty is without merit and Judge Morris' analysis will be adopted.

## G.

Schattilly next appears to object, once again, to Judge Morris' construction of the consent agreement. Schattilly includes a long quote from the Report where Judge Morris details why

Schattilly's explanation of her consent—that it was valid as to the place, but not the removal—cannot be credited. Schattilly seems to take issue with Judge Morris' determination that, on the basis of *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008), she does not state a valid claim.

Schattilly states that "[i]n the instant case, a factual dispute as to the consent to utilize Innerlink could not be starker but the Magistrate has resolved that dispute without any authority to do so." ECF No. 34 at 10-11. There is not, however, any factual dispute in this case. All facts alleged by Schattilly, at this stage, are taken as true. But even taking the facts in the complaint as true, as discussed above, Schattilly's complaint does not succeed. This issue has already been analyzed, *supra* § III.A, it will not be entertained again here. The objection is overruled.

### H.

Schattilly's final objection takes issue with an alternative ground of disposition found by Judge Morris. ECF No. 34 at 11. Schattilly urges this Court to adopt the reasoning of her supplemental brief on the issue of *Heck* waiver, *see Heck v. Humphrey*, 512 U.S. 477 (1994), and decline to adopt the Report's recommendation that *Heck* waiver applies to bar her claims. *Id*. Since the issue of *Heck* waiver was presented in the third alternative it does not bear on the resolution of Schattilly's case. It is unnecessary to reach that issue since sufficient independent grounds, analytically prior to the Heck analysis, exist in the Report that supports its adoption. Schattilly's objection will be overruled.

### IV.

Accordingly, it is **ORDERED** that the Report & Recommendation, ECF No. 43, is **ADOPTED**.

It is further **ORDERED** that Defendant Thomas Daugharty's Motion to Dismiss, ECF No. 37, is **GRANTED**.

It is further **ORDERED** that Plaintiff Kathleen Schattilly's First Amended Complaint, ECF No. 6, is **DISMISSED with prejudice**.


Dated: August 31, 2015                               s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 31, 2015.

                                  s/Karri Sandusky
                                  Karri Sandusky, Acting Case Manager

---